ORIGINAL

#068211

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

FILED
JUN 9 2008
U.S. COURT OF FEDERAL CLAIMS

SCHOOLEY MITCHELL TELECOM CONSULTANTS OF BOWIE--FIELDS LLC,

Plaintiff,

v.

THE UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

Defendant.

Case No. 08-420 C

## COMPLAINT

Pursuant to 41 U.S.C. § 609(a)(1), Plaintiff Schooley Mitchell Telecom Consultants of Bowie - Fields LLC ("Schooley Mitchell"), by and through its attorneys, hereby brings this action against Defendant, the United States of America, acting by and through the United States Department of Veterans Affairs ("VA," the "Government," or "Defendant") to, *inter alia* (1) challenge the final decision of the contracting officer for the VA dated March 19, 2008 and (2) recover damages on Schooley Mitchell's certified claim under its January 2007 Service Agreement with the VA. For its Complaint, Schooley Mitchell states the following:

## INTRODUCTION

1. This case arises out of a January 2007 written Service Agreement between Schooley Mitchell and the VA (the "Agreement"). Under the Agreement, the VA expressly engaged Schooley Mitchell to provide certain consulting services as stated in the Agreement. Specifically, the VA: (a) authorized Schooley Mitchell to obtain copies of the VA's

telecommunications records; (b) requested that Schooley Mitchell review the VA's existing telecommunication systems, methods, equipment, and invoices, etc.; and, (c) provide recommendations for optimizing the VA's telecommunications systems with the sole intent of reducing the VA's telecommunications expenses. Under the express terms of the Agreement, the VA contracted to pay Schooley Mitchell 50% of all savings realized by the VA as a result of the implementation of Schooley Mitchell's recommendations over a period of twenty-four (24) months. Schooley Mitchell performed the services as set forth in the Agreement, and made and implemented numerous cost-saving recommendations to benefit the VA. The VA accepted every one of Schooley Mitchell's cost-saving recommendations, and as a direct result the VA has saved and will save a total of $1,635,082.95 over the twenty-four (24) months following the VA's acceptance of Schooley Mitchell's recommendations.

2. There is no dispute that Schooley Mitchell performed all required services under the Agreement. In fact, Schooley Mitchell has submitted a series of invoices representing Schooley Mitchell's 50% share of the savings as requested by the VA, and the VA has paid some of Schooley Mitchell's invoices. However, the VA has failed to pay the full amount due under the Agreement, and has subsequently advised Schooley Mitchell that it is not entitled to be paid in accordance with the terms of the Agreement.

3. The VA's failure to abide by the plain terms of the Agreement has no justification. The VA's failure to pay Schooley Mitchell the consideration earned under the Agreement is a material breach of the Agreement, as well as an arbitrary and capricious determination not supported by the applicable laws and regulations of the United States. Schooley Mitchell is entitled to payment of the invoices for its share of savings earned under the Agreement, plus interest under the Prompt Payment Act and the Contracts Disputes Act.

## PARTIES

4. Plaintiff Schooley Mitchell Telecom Consultants of Bowie - Fields LLC ("Schooley Mitchell") is a limited liability company duly organized and existing under the laws of the State of Maryland. Schooley Mitchell is a small business under the Equal Access to Justice Act. Schooley Mitchell is also registered in the Central Contractor Registration (CCR) as a Federal Authorized Small Business.

5. Schooley Mitchell performs telecommunications consulting services for its clients, including audits of existing telecommunications systems and implementation of its recommendations to optimize efficiency and reduce costs for its clients, and is party to a written Agreement for such services with the Department of Veterans Affairs dated January 29, 2007.

6. Defendant is the United States of America, acting by and through the United States Department of Veterans Affairs.

## JURISDICTION

7. Jurisdiction is proper in this Court pursuant to the Tucker Act, 28 U.S.C. § 1491(b), and the Contract Disputes Act, 41 U.S.C. §§ 601- 613.

8. On November 19, 2007, Schooley Mitchell, by counsel, submitted a certified claim and request for a final decision to Contracting Officer, Phyllis Jackson, of the Department of Veterans Affairs.

9. The certified claim requested that the Contracting Officer award Schooley Mitchell $793,442.00 as payment for services earned under the terms of the Agreement between VA and Schooley Mitchell.

10. On March 19, 2008, the VA, acting by and through Contracting Officer Phyllis Jackson, denied Schooley Mitchell's claim.

11. This action is timely filed pursuant to the Contract Disputes Act, 41 U.S.C. § 609(a)(3), within twelve months from the date of the VA's final decision on March 19, 2008 denying Schooley Mitchell's claim.

## FACTS ENTITLING PLAINTIFF SCHOOLEY MITCHELL TO RELIEF

### *Pre-Agreement Negotiations*

12. Prior to the execution of the Agreement, representatives of the VA and Schooley Mitchell met at the VA's offices, located at 810 Vermont Ave NW, Washington DC 20420, to discuss the business terms and possible benefits that Schooley Mitchell's services could offer the VA.

13. Specifically, on January 10, 2007, Eric Fields, an authorized representative of Schooley Mitchell, made a presentation to several representatives of the VA. The presentation detailed the services Schooley Mitchell would provide to the VA, and explained how Schooley Mitchell's services and recommendations could significantly reduce the VA's telecommunication system costs.

14. The following representatives of the VA were present at the January 10, 2007 meeting: Patricia Graves, John Gulley, William Geibel, Dorothy Madison, and Sean Carlin. These representatives actively participated in Mr. Fields' presentation and fully understood the services to be provided by Schooley Mitchell, and the means by which Schooley Mitchell would be compensated for those services and recommendations.

15. In recognition of Schooley Mitchell's business plan and proposal to the VA, John W. Gulley of the VA sent an E-Mail to Eric Fields, as well as VA representatives William J. Geibel, Jr., Dorothy Madison and Sean Carlin. This E-Mail, sent before execution of the written Agreement, notified Schooley Mitchell that the VA had authorized Schooley Mitchell to analyze

the VA's current telecommunication system and costs. The E-Mail further stated that the VA wanted Schooley Mitchell to analyze the following aspects of the VA's telecommunication operations: "usage," "inactive accounts," "overcharges", and "plan choices." The E-Mail also stated that VA representative and IT Specialist William Geibel ("Mr. Geibel") was Schooley Mitchell's contact for "billing / contract" issues.

***The Agreement***

16. On or about January 10, 2007, Schooley Mitchell delivered to the VA a written agreement setting forth the terms under which Schooley Mitchell was willing to contract for its services with the VA.

17. Schooley Mitchell tendered its written agreement to the VA with the understanding that the VA would direct the agreement to the proper authority within VA to execute the agreement on behalf of the Government.

18. After the VA reviewed the agreement tendered by Schooley Mitchell for approximately three (3) weeks, Schooley Mitchell was advised that the agreement was acceptable to the VA and would be signed on behalf of the VA by Michael Williams.

19. The VA and Schooley Mitchell formally entered into a written Service Agreement dated January 29, 2007 (the "The Agreement"), a true and accurate copy of which is attached hereto and incorporated herein as Exhibit 1, upon the date the Agreement was executed by Mr. Williams on behalf of the VA.

20. The Agreement was signed by Michael J. Williams, Director of Information Systems Support, on behalf of the VA, and the VA advised Schooley Mitchell that Mr. Williams had the requisite authority to bind the VA.

21. Mr. Williams signature appears directly above language in the Agreement that states that Mr. Williams has "the authority to bind" the VA and is an "authorized" representative of the VA. (Ex. 1 at p. 2.)

22. The VA selected Mr. Williams to sign the Agreement on its behalf, and Mr. Williams' signature evidences that he had actual and/or implied authority to enter into the Agreement on behalf of the VA.

23. The Agreement confirmed Schooley Mitchell's authorization to review the VA's telecommunication systems and to submit cost-saving recommendations to the VA. According to the Agreement, all recommendations submitted to the VA by Schooley Mitchell were subject to the client's approval prior to implementing cost saving modifications.

24. Under the Agreement, the VA contracted to pay Schooley Mitchell as a fee for the services rendered the following:

> fifty (50) percent of all savings realized as a result of the acceptance of recommendations made by Schooley Mitchell and reductions in cost realized as a result of Schooley Mitchell's instigation or negotiation of such cost reductions, for a period of twenty-four (24) months from the date of implementation of the accepted recommendation, or cost reduction, after which time the entire savings will accrue to [the VA];

and

> fifty (50) percent of each refund or credit or other consideration realized based on Schooley Mitchell's identification of billing errors or other causes.

(Ex. 1 at sections 8 and 9.)

25. The Agreement stated that any recommendation acted upon by the VA "within twenty-four (24) months of submission by Schooley Mitchell shall be deemed to be accepted by [the VA]." (Ex. 1 at Section 2.)

26. The VA agreed to pay Schooley Mitchell "within thirty (30) days of receipt of the refund, credit or consideration by [the VA]." (Ex. 1 at Section 9.)

27. Since the VA agreed to pay Schooley Mitchell out of any savings realized by the VA from Schooley Mitchell's services, no additional funds were required to be appropriated to make payment to Schooley Mitchell. Payment to Schooley Mitchell was to be a portion of the amounts already appropriated and allocated to pay the VA's telecommunications expenses.

***Performance Under the Agreement***

28. On January 29, 2007, the same day that the Agreement was executed by the VA, Schooley Mitchell received from the VA six (6) separate written authorizations to obtain telecommunication records from the following companies that provided telecommunication services to the VA: (1) Sprint / Nextel; (2) AT&T Wireless; (3) Verizon Wireless; (4) Cingular Wireless; (5) T-Mobile; and (6) Comcast. Additionally, on March 14, 2007, the VA gave written authorization to obtain records from AT& T Business Landline Division.

29. All seven (7) written authorizations were signed on behalf of the VA by VA employee William J. Geibel, Jr. and stated that, "[The VA has] engaged Schooley Mitchell Telecom Consultants to act on [the VA's] behalf regarding all our telecommunications services."

30. After receiving written authorization from the VA to obtain records from the VA's telecommunication providers, Schooley Mitchell promptly obtained said records and began a comprehensive analysis of the VA's telecommunication systems.

31. Schooley Mitchell analyzed the VA's current configuration and made numerous cost-saving recommendations, including but not limited to recommendations related to usage, inactive accounts, overcharges, plan choices, and credits.

32. For each telecommunication provider, Schooley Mitchell provided the Government with: (1) a Value Report detailing the current annual cost of each provider, proposed recommendations, and the proposed annual cost reduction if VA implemented Schooley Mitchell's recommendations; and (2) an Executive Summary detailing Schooley Mitchell's recommendations, including backup documentation.

33. Each Executive Summary requested that an authorized VA representative "initial beside the recommendation so [Schooley Mitchell] may begin the process of implementing the changes on your behalf to realize the savings as quickly as possible for you."

34. VA representative Mr. Geibel initialed and signed each Executive Summary, thereby approving Schooley Mitchell's recommendations.

35. Each Executive Summary verified the current cost that the VA was paying each telecommunications provider.

36. Each Executive Summary also calculated the "24 month" savings as a result of Schooley Mitchell's recommendations.

37. The VA's calculated 24-month savings in the Executive Summary dated February 22, 2007 under its Sprint / Nextel Account was $213,780.72.

38. The VA has realized, and will realize savings in an amount not less than $213,780.72 under the Sprint / Nextel Account as result of Schooley Mitchell's recommendations.

39. The VA's calculated 24-month savings in the Executive Summary dated March 19, 2007 under its T-Mobile account was $18,196.96.

40. The VA has realized, and will realize savings in an amount not less than $18,198.96 under the T-Mobile as result of Schooley Mitchell's recommendations.

41. The VA's calculated 24-month savings in the Executive Summary dated April 19, 2007 under its AT&T / Cingular Account No. 992778419 was $576,132.72.

42. The VA has realized, and will realize savings in an amount not less than $576,132.72 under the AT&T / Cingular Account No. 992778419 as result of Schooley Mitchell's recommendations.

43. The VA's calculated 24-month savings in the Executive Summary dated April 19, 2007 under its AT&T / Cingular Account No. 870557221 was $331,115.82.

44. The VA has realized, and will realize savings in an amount not less than $331,115.82 under the AT&T / Cingular Account No. 870557221 as result of Schooley Mitchell's recommendations.

45. The VA's calculated 24-month savings in the Executive Summary dated May 29, 2007 under its Verizon Wireless Account was $470,330.16.

46. The VA has realized, and will realize savings in an amount not less than $470,330.16 under the Verizon Wireless Account as result of Schooley Mitchell's recommendations.

47. In addition, Schooley Mitchell negotiated $25,524.57 in credits from AT&T / Cingular on behalf of VA, which such credits were received by the VA.

***VA's Partial Payment and Schooley Mitchell's Submission of Invoices***

48. After execution of the Agreement, Mr. Geibel, as an authorized representative of the VA, requested that Schooley Mitchell issue invoices to the VA for 50% of VA's 24-month savings.

49. Mr. Geibel stated that the VA preferred to pay for 50% of the 24-month savings on a one-time basis, and requested that Schooley Mitchell submit invoices on that basis.

50. On March 26, 2007, the VA paid Schooley Mitchell the entire amount owed to Schooley Mitchell under the T-Mobile Account. Said payment was in the amount of $9,099.48, and constituted 50% of the $18,196.96 realized by the VA over a 24-month period. This payment was in accordance with VA's stated preference to make a one-time payment to Schooley Mitchell for the 24-month period of savings.

51. On May 24, 2007, the VA made a partial payment of $15,000.00 to Schooley Mitchell for savings under the AT&T / Cingular Account No. 870557221. Mr. Geibel acknowledged this partial payment and provided Schooley Mitchell with a commitment that the reminder would be paid by the VA under the terms of the Agreement.

52. In accordance with the terms of the Agreement at Sections 8-10, and at Mr. Geibel's request, Schooley Mitchell submitted invoices for 50% of the VA's cost savings as a result of Schooley Mitchell's recommendations for a period of two years.

53. Schooley Mitchell submitted four (4) additional invoices, all dated June 20, 2007, to the VA for 50% of the savings under the Sprint/Nextel Account, the Verizon Wireless Account, AT&T / Cingular Account No. 870557221, and AT&T / Cingular Account No. 992778419 for a two year period.

54. In addition, Schooley Mitchell submitted a $12,762.29 invoice dated June 20, 2007 for 50% of the total credits negotiated on behalf of the VA by Schooley Mitchell under the AT&T / Cingular Account. Said invoice represented 50% of the $25,524.57 credit negotiated by Schooley Mitchell for the VA.

55. The sum of these five June 20, 2007 invoices (the "Invoices") was $793,442.60, which represents 50% of the $1,610,983.47 in savings that Schooley Mitchell identified through its services under the Agreement.

56. During the time after the initial submission of invoices by Schooley Mitchell and prior to the invoices submitted on June 20, 2007, Contracting Officer Jose Bombray of the VA contacted Schooley Mitchell, and advised that he was interested in determining whether Schooley Mitchell was an 8(a) certified small business or had an active GSA Schedule contract. Mr. Bombray explained to Schooley Mitchell that if Schooley Mitchell were an 8(a) firm or had an active GSA Schedule it would assist the VA in getting Schooley Mitchell's invoices paid. Mr. Bombray acknowledged to Schooley Mitchell that the VA was aware of its invoices and was working to pay Schooley Mitchell in accordance with the terms of the Agreement.

57. Shortly after submission of Schooley Mitchell's invoices on June 20, 2007, Schooley Mitchell learned that Ms. Phyllis Jackson had replaced Mr. Bombray as the contracting officer handling Schooley Mitchell's payments, and no further monies were paid to Schooley Mitchell under the Agreement.

58. Despite the submission of invoices in accordance with the terms of the Agreement and at the specific request of the VA, communication by the VA that payment was being processed and subsequent written demand for payment, the VA has refused to pay Schooley Mitchell the amounts set forth in its June 20, 2007 invoices.

***The VA's Attempt to Avoid the Obligations Under the Agreement***

59. During the months immediately following submission of Schooley Mitchell's invoices, the VA expressed a clear repudiation of its obligations under the Agreement, and has taken the position that (1) the Agreement is not a valid contract; and (2) the VA owes nothing further to Schooley Mitchell.

60. After submission of Schooley Mitchell's invoices, the VA initially advised Schooley Mitchell that payment was being processed through the VA Contracting Officer.

Schooley Mitchell was contacted by the VA contracting officer, Mr. Bombray, who indicated that he was working to get Schooley Mitchell paid.

61. Schooley Mitchell was later advised that payment was being held up by the VA pending the completion of internal paperwork necessary for the Contracting Officer to ratify the Agreement. Schooley Mitchell was informed that this delay was only temporary, and that the VA anticipated ratification of the Agreement to occur within sixty (60) days, after which Schooley Mitchell's invoices could be paid.

62. In or about August 2007, the VA stopped returning phone calls from Schooley Mitchell, and Schooley Mitchell was not able to obtain information on the status of the payment on its invoices. In fact, Schooley Mitchell learned that individuals inside VA were advised not to speak to Schooley Mitchell about the status of the Agreement.

63. In or about August 2007, Schooley Mitchell received stop work order from VA Contracting Officer Phyllis Jackson.

64. In or about October 2007, Ms. Susan Grubb, Director, Center for Acquisition Innovation of the VA, verbally informed Schooley Mitchell that the VA would not make payment on the outstanding invoices. Ms. Grubb later advised Schooley Mitchell in an E-Mail that the VA was taking the position that the Agreement was not signed by an authorized individual, and that the Agreement was not suitable for ratification. Further, Schooley Mitchell was advised that it could not be paid under the Agreement, and that if Schooley Mitchell wanted to be "reimbursed for its work" it would have to file a claim with the Contracting Officer, Ms. Phyllis Jackson.

65. Finally, on November 19, 2007, Schooley Mitchell filed its Certified Claim and Request for Contracting Officer's Final Decision with Ms. Jackson. On March 19, 2008,

Schooley Mitchell received the Contracting Officer's Final Decision denying its claim. A true and accurate copy of the Final Decision is attached hereto and incorporated herein as Exhibit 2.

**COUNT I**
**Request for Declaratory Relief**

66. Paragraphs 1 through 63, above, are incorporated herein by reference and are repleaded as if fully set out in this paragraph 66.

67. An actual and justiciable controversy exists between Schooley Mitchell and the VA concerning whether the Agreement constitutes a valid contract between Schooley Mitchell and the VA.

68. The terms of the Agreement express an enforceable contract under which Schooley Mitchell is entitled to the consideration set forth therein for work and services performed by Schooley Mitchell and accepted by the VA.

69. The VA authorized Schooley Mitchell to proceed under the terms of the Agreement upon execution of the Agreement, and in a multitude of other written directives, including the written authorizations to access and alter the VA's telecommunications accounts, as well as partial payment to Schooley Mitchell for its work and services in accordance with the terms of the Agreement.

70. The VA's unwillingness to ratify the Agreement was arbitrary and capricious, and contrary to applicable law and regulation.

**COUNT II**
**Breach of Contract**

71. Schooley Mitchell incorporates herein paragraphs 1 to 68 of this Complaint by reference as if fully set out in this paragraph 71.

72. The VA's failure to pay the $793,442.60 amount due under the Invoices constitutes a willful and material breach of the Agreement.

73. As a direct and proximate result of such breach, Schooley Mitchell was damaged in an amount not less than $793,442.60.

74. Despite demand, the VA has failed and refused to pay the Invoices.

75. The VA's denial of payment to Schooley Mitchell is not supported by the Agreement, nor any applicable law or regulation.

**COUNT III**
**Anticipatory Breach of Contract**

76. Schooley Mitchell incorporates herein paragraphs 1 to 73 of this Complaint by reference into this paragraph 76.

77. In the alternative, if any amounts under the Agreement were not due as of the date of the Invoices, or are not currently due, the VA has expressed a clear repudiation of its obligations under the Agreement.

78. The VA's repeated expressions of repudiation of its obligations under the Agreement include, but are not limited to VA contracting officer's final decision, in which the VA stated that the Agreement does not constitute a valid contract between the parties.

79. The contracting officer had no basis for concluding that the Agreement was not valid because: (1) VA Director Mr. Williams had implied actual authority to enter into the Agreement; and (2) the VA institutionally ratified the Agreement.

80. The VA's failure to pay a portion of $793,442.60 and stated intention not to pay the remainder of the $793,442.60 constitutes a material breach of the Agreement.

81. As a direct and proximate result of such breach, Schooley Mitchell was and will be damaged in an amount not less than $793,442.60.

**COUNT IV**
**Quantum Meruit/Unjust Enrichment**

82. Schooley Mitchell incorporates herein paragraphs 1 to 79 of this Complaint by reference as if fully set out in this paragraph 82.

83. The VA requested that Schooley Mitchell (1) obtain the VA's telecommunication records; (2) conduct a comprehensive analysis of the VA's telecommunication systems and configurations; and (3) make and implement cost-saving recommendations to the VA's existing telecommunications accounts, including but not limited to recommendations related to usage, inactive accounts, overcharges, plan choices, and credits.

84. In accordance with the VA's request, Schooley Mitchell (1) obtained the VA's telecommunication records; (2) conducted a comprehensive analysis of the VA's telecommunication systems and configurations; and (3) made and implemented cost-saving recommendations to the VA's existing telecommunications accounts, including but not limited to recommendations related to usage, inactive accounts, overcharges and plan choices.

85. As a direct result of Schooley Mitchell's actions as described above, Schooley Mitchell has conferred and the Government has received a benefit of $1,635,082.95 in cost savings.

86. The Government had knowledge of the conferring benefits of Schooley Mitchell's work and services, which resulted in the cost savings.

87. The Government accepted the benefits provided by Schooley Mitchell in such a way that the Government will be unjustly enriched if Schooley Mitchell is not compensated for the fair and reasonable value of the Government's cost savings.

88. The fair and reasonable value of the benefit realized by the Government for which Schooley Mitchell has not been compensated is not less than $793,442.60.

## PRAYER FOR RELIEF

WHERFORE, Schooley Mitchell respectfully requests that this Court:

(i) declare the rights and obligations of the parties, and enter an Order finding that the Agreement is a valid contract between Schooley Mitchell and the VA;

(ii) enter a judgment holding that the VA breached the Agreement;

(iii) enter a judgment holding that the VA has anticipatorily breached and repudiated the Agreement, and that all amounts due under the Agreement are due and owing to Schooley Mitchell;

(iv) award Schooley Mitchell damages in an amount not less than $793,442.60 plus interest under the Prompt Payment Act and the Contract Disputes Act, or at a minimum, declare that Schooley Mitchell is entitled to such payment;

(v) award Schooley Mitchell such other relief, including but not limited to attorney's fees and other entitlements under the Equal Access to Justice Act, as this Court deems just and appropriate.

Respectfully submitted,

Edward V. Gregorowicz, Jr., Esq.
The Law Offices of Edward V. Gregorowicz, Jr.
10565 Lee Highway – Suite 102
Fairfax, Virginia 22030
Phone: (703) 934-6645
Fax: (703) 934-6649
EVGLAW@aol.com
*Counsel for Plaintiff Schooley Mitchell Telecom Consultants of Bowie - Fields LLC*