# Service Agreement

Between The Department of Veterans Affairs and Schooley Mitchell Telecom Consultants.

## AGREEMENT TERMS

1. The client hereby authorizes Schooley Mitchell to review its telecommunications system and to submit recommendations for improvements including recommendations for possible savings. This review may include the review of existing systems, services, equipment, suppliers, plans and other telecom functions; and the recommendations may include alternate methods, systems, services, equipment, suppliers or plans or other suggestions for improvement or cost savings.

2. All recommendations for improvements to the telecommunication system including recommendations for possible savings made by Schooley Mitchell are subject to the client's approval. No action regarding such changes shall be undertaken without the prior consent of the client. Any recommendations acted upon by the client within twenty-four (24) months of submission by Schooley Mitchell shall be deemed to be accepted by the client.

3. The client hereby authorizes Schooley Mitchell to identify and pursue, on the client's behalf, possible refunds or credits due to billing errors or other causes.

4. The client will provide Schooley Mitchell with equipment records, telecommunications invoices, contracts and other related information, as well as written authorization for Schooley Mitchell to receive all such records and information directly from suppliers, during the payment term of this agreement as required by Schooley Mitchell.

5. All records and information submitted for review by the client shall be held in the strictest confidence by Schooley Mitchell.

6. All recommendations, actions and suggestions submitted by Schooley Mitchell for the client's consideration shall be held in the strictest confidence by the client.

7. The term of this Service Agreement shall be twenty-four (24) months from the date of signing.

EXHIBIT

tabbles

1

## PAYMENT TERMS

8. The client agrees to pay Schooley Mitchell, as its fee for the services rendered under this agreement, fifty (50) percent of all savings realized as a result of the acceptance of recommendations made by Schooley Mitchell and reductions in cost realized as a result of Schooley Mitchell's instigation or negotiation of such cost reductions, for a period of twenty-four (24) months from the date of implementation of the accepted recommendation, or cost reduction, after which time the entire savings will accrue to the client.

9. The client also agrees to pay Schooley Mitchell. fifty (50) percent of each refund or credit or other consideration realized based on Schooley Mitchell's identification of billing errors or other causes. Payment will be due within thirty (30) days of the receipt of the refund. credit or consideration by the client.

10. Schooley Mitchell will provide invoices detailing the computation of savings and refunds.

## OTHER SERVICES

11. Telecommunications consulting services, billed on an hourly basis are also available. An estimate will be provided and agreed upon by the client and Schooley Mitchell before proceeding with any consulting work.

The Department of Veterans Affairs
(Client Name)

810 VERMONT AVE. N.W.

WASHINGTON, D.C. 20420
(Address)

(202) 273-8697
(Telephone)

[signature]
Signature of Authorized Client Representative
I have the authority to bind the corporation (company)

Michael T. Williams
Print Name

Director, Info Systems Support
Title

1/29/07
Date

Schooley Mitchell Telecom Consultants
(Business Name)

10002 Erion Court
Bowie MD 20721
(Address)

301-925-4239
(Telephone)

[signature]
Signature of Authorized Client Representative
I have the authority to bind the corporation (company)

Eric Fields
Print Name

Strategic Partner
Title

1/26/2007
Date

**DEPARTMENT OF VETERANS AFFAIRS**
**DEPUTY ASSISTANT SECRETARY FOR ACQUISITION AND LOGISTICS**
**WASHINGTON DC 20420**

**In Reply Refer To**: 049A3A

March 19, 2008

Mr. Edward V. Gregorowicz, Jr., Esq.
Suite 102
10565 Lee Highway
Fairfax, Virginia 22030

Re: Certified Claim and Request for Contracting Officer's Final Decision on behalf of Schooley Mitchell Telecom Consultants regarding January 2007 Service Agreement

Dear Mr. Gregorowicz:

This is in response to your November 19, 2007, letter submitting the claim of Mr. Eric Fields of Schooley Mitchell Telecom Consultants (Schooley Mitchell) referenced above and requesting a contracting officer's final decision.

This matter concerns a purported contract with VA related to a "Service Agreement" document whereby Schooley Mitchell would review VA's telecommunications system, invoices and contracts, submit recommendations for improvements, and be paid 50% of all savings realized. Further, the term of this purported contract was to be 24 months from the date of signing. This document was signed on behalf of VA by Michael J. Williams, then Director, Information Systems Support, located in VA's Central Office, 810 Vermont Avenue, Washington, DC, on January 29, 2007. Schooley Mitchell claims to have performed work pursuant to this "Service Agreement" that entitles it to a sum of not less than $793,442.00.

In answer to your claim, Schooley Mitchell knew, or should have known, that contracts may be entered into and signed on behalf of the Government only by contracting officers. Federal Acquisition Regulation (FAR) 1.601. Contracting officers may bind the Government only to the extent of the authority delegated to them. FAR 1.602-1. Mr. Michael J. Williams was not a warranted contracting officer and no purported contract signed by him is binding against VA. The Government can only be bound by those with authorization to bind it and anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays with the bounds of his

EXHIBIT
tabbies
2

authority. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1260 (Fed. Cir. 2005). Likewise, your reliance on the alleged conduct of Mr. William J. Geibel, Jr., another VA employee, does not support your claim as Mr. Geibel is not a properly warranted contracting officer authorized to enter into such a contract. Your firm must bear the risk of failing to adequately ascertain that these individuals were not properly warranted and authorized contracting officers.

In your claim you write that Mr. Williams had actual authority because he signed the "Service Agreement" under the pre-printed language "I have authority to bind the corporation (company)." While it may be the situation that, to your firm, Mr. Williams acted as an authorized agent of the Government, this appearance does not equate to him actually being an authorized agent.

Next, you contend that even if Mr. Williams did not have actual authority, he must have had implied actual authority. VA recognizes that implied actual authority may bind the Government, provided that contracting authority is considered an integral part of the duties of the Government official involved. The title of the official is not relevant, but, whether contracting was an integral part of the officials duties. This was certainly not the case as a procurement request for these services was submitted to the VA Central Office acquisition office by his office after Mr. Williams signed this document. It was not within the duties of Mr. Williams to negotiate and execute contracts. Since acquisition of such services was not an integral part of his duties, no one with implied actual authority took action that could result in an enforceable contract.

Lastly, you contend, in the alternative, that if the purported contract was not initially authorized by VA, it was subsequently institutionally ratified by VA's own actions. Institutional ratification may occur and give rise to a contract where a government agency accepts benefits followed by a promise of payment by the agency or approval of payment by a senior agency official with authority to obtain reimbursement for the one providing those benefits. Further, institutional ratification may occur where senior agency officials were aware of the unauthorized agreement and allowed performance to continue. These are not the facts in the instant matter. While two payments were made to your firm apparently by Geibel by Government purchase card, these were not made by a senior agency official authorized to approve payment for the entire claimed contract amount. At present, I cannot determine if those Government purchase card payments were proper. The review and determination of the propriety of such use of a Government purchase card is not within my purview. However, as contracting officer, I am responsible for determining whether the claimed amount is contractually proper for payment. Neither Williams nor Geibel had authority to ratify this contract; therefore, their actions were not controlling. Further, no senior agency official with such authority permitted this alleged contract work to continue. In fact, once the contracting office became aware of the ongoing work by your firm, after receipt of the procurement request, it immediately took steps to inform Williams' office to instruct you to cease work. Therefore, the elements of institutional ratification have not been met.

Finally, operating against your claim is that key elements of ratification cannot be met. They are that the resulting contract would have otherwise been proper if made by an appropriate contracting officer and that funds are and were available at the time the unauthorized commitment was made. FAR 1.602-3(c)(3), (6). First, the procurement was not publicized even though it should have been expected to exceed $25,000, as required by 15 U.S.C. 637(e) as implemented in FAR Part 5. In the absence of such competition, no rational basis exists to establish that the claimed costs are fair and reasonable. FAR 1.602-3(c)(4). Also, the purported contract was a multi-year contract for a period of two years in violation of the Anti-deficiency Act. Even properly warranted contracting officers cannot agree to bind the Government to a commitment in excess of available appropriations. Funds would not have been available at the time the purported contract was signed outside of that current fiscal year. Therefore, the purported contract is not eligible for ratification in any event.

Based on the foregoing, your claim is denied. This is the final decision of the Contracting Officer. You may appeal this decision to the Civilian Board of Contract Appeals (CBCA). If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the CBCA and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the CBCA, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the CBCA, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

The address of Civilian Board of Contract Appeals (CBCA) is 1800 F. Street NW, Washington, DC 20405.

Sincerely,

Phyllis Jackson

PHYLLIS JACKSON
Contracting Officer